

**SIGNED this 27th day of June, 2017**

```
                                    _____
                                         Shelley D. Rucker
                                    UNITED STATES BANKRUPTCY JUDGE
```

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | |
| CARLTON MARK VOLLBERG<br>    Debtors; | No. 1:16-bk-12276-SDR<br>Chapter 11 |
| JOSEPH WEAVER, RONALD W. TOMPKINS<br>M.D., AND CARDINAL MANAGEMENT<br>SERVICES,<br>    Plaintiffs, | |
| v. | |
| CARLTON MARK VOLLBERG,<br>    Defendant. | Adversary Proceeding<br>No. 1:17-ap-01009-SDR |

## MEMORANDUM

On June 3, 2016, Carlton Mark Vollberg ("Defendant" or "Debtor") filed a chapter 11

bankruptcy. On March 8, 2017, creditors Joseph Weaver, Ronald W. Tompkins, M.D., and

1

Cardinal Management Services("CMS") (together "Plaintiffs") filed this adversary proceeding asking the court to declare the debts evidenced by proofs of claim 14, 15, and 17 to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) & (B) and to deny the Debtor's discharge as to all creditors pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(4)(A), (a)(4)(C) & (a)(5).  On April 24, 2017, Defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted.  For the following reasons, the court will deny the motion to dismiss as to the claims of Tompkins and the objection to discharge made by all of the Plaintiffs.  As to the objection to the dischargeability of the debts owed to CMS, the court finds that CMS has not stated a claim; but the court will grant CMS 21 days to amend the complaint to satisfy Federal Rule of Civil Procedure 12(b)(6) made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012.

## I.    Jurisdiction

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this district, provide this court with jurisdiction to hear and determine this adversary proceeding.  The Plaintiffs' action regarding the dischargeability of particular debts and objection to discharge is a core proceeding.  *See* 28 U.S.C. § 157(b)(2)(I) & (J).

## II.    Statement of Material Facts

Because the court is ruling on a motion to dismiss under F.R.C.P. 12(b)(6), the court must accept as true all well-pled factual allegations stated in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic, Corp. v. Twombly*, 550 U.S. 544 (2007)).  However, legal conclusions are not entitled to the assumption of truth. *Id.* at 680.  For the purposes of this

motion, the court will consider the following allegations from Plaintiffs' complaint (Doc. no. 1[1], Complaint Objecting to Discharge and Dischargeability) as true.

### A. CMS Debt

Defendant, Deborah Vollberg (Defendant's wife), and Carlton M. Vollberg, D.O., P.C. (Defendant's business) obtained a loan from CMS on October 24, 2008 for $312,000 and executed a promissory note. The debt was secured by real property, including the Debtor's personal residence and personal assets. On November 27, 2015, the same parties entered into a new promissory note for $450,000. Defendant represented to Plaintiff Weaver, a partner in CMS, that the money, in addition to refinancing the original loan, was to be used to make improvements on the collateral securing the loan. Prior to obtaining the refinancing, Defendant provided Weaver with a personal financial statement dated February 20, 2014, which showed assets with a total value of $7,880,000 and liabilities of $5,560,000. CMS alleges that it relied upon the representations and promises of the Defendant.

The value of the assets in the personal financial statement were significantly higher than the value of the assets listed on Defendant's bankruptcy petition which showed assets with a value of $2,702,008.84. Plaintiffs also attached the Defendant's disclosure statement in which he represents that his assets are worth $1,703,087 and his liabilities are $3,951,975.

CMS filed proof of claim no. 14 in the bankruptcy case and asserted that there is a balance of $467,678.52 still outstanding on the debt.

### B. Tompkins' Debts

Prior to the refinancing of the CMS debt, Defendant and Carlton M. Vollberg, D.O., P.C., had obtained a loan from Weaver individually. They executed a promissory note payable to Weaver on June 9, 2014 in the original principal amount of $100,000. The note was unsecured.

---

[1] All docket numbers relate to pleadings filed in this adversary proceeding unless otherwise indicated.

Prior to extending the credit, Defendant presented the February 20, 2014 financial statement to Weaver, which he alleges he relied on to make the loan. Tompkins acquired this debt from Weaver. Tompkins has filed proof of claim no. 17, which shows a balance outstanding on the note of $77,492.39.

Defendant and Carlton M. Vollberg, D.O., P.C., obtained a second loan from Weaver for $20,200. They executed a promissory note on December 23, 2014, payable to Weaver. This loan was unsecured. Weaver alleges that he relied on the same personal financial statement which Defendant presented to Weaver in order to obtain the first loan.

As noted above, the asset values on the February 20, 2014 financial statement are significantly different than the values contained in the Defendant's schedules and disclosure statement.

Tompkins also acquired this debt from Weaver. He filed proof of claim no. 15, which shows a balance outstanding on this note of $10,144.75.

C. Denial of Discharge

Defendant has not relied on F.R.C.P. 12(b)(6) to dismiss Plaintiffs' claim under 11 U.S.C. § 727. Instead, Defendant argues that the claim is time barred. The only facts relevant to that issue are as follows.

Debtor filed chapter 11 bankruptcy on June 3, 2016. On June 9, 2016, a Notice of Chapter 11 Bankruptcy Case was entered and sent to creditors. *In re Vollberg*, Case no. 1:16-bk-12276 SDR, Doc. No. 12, Notice of Filing. Paragraph 7 of that notice[2] stated:

---

[2] The court notes that because of the layout of the notice, a reader could be confused that the deadline for objections to both discharge and dischargeability was September 9, 2016; however, such a reading of the notice would be contrary to the applicable bankruptcy rules as discussed in section III.C below.

4

| 7. Deadlines
The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines. | **File by the deadline to object to discharge or to challenge whether certain debts are dischargeable:** | First date set for hearing on confirmation of plan. The court will send you a notice of that date later. |
|---|---|---|
| | **You must file a complaint:**<br>• If you assert that the debtor is not entitled to receive a discharge of any debts under 11 U.S.C § 1141(d)(3) or<br>• If you want to have a debt excepted from discharge under 11 U.S.C. § 523(a)(2),(4), or (6). | **Filing deadline for dischargeability complaints: 9/9/16** |

*Id.*

The deadline to object to dischargeability was extended until March 9, 2017. Order Extending Deadline, *In re Vollberg,* Case no. 1;16-bk-12276 (Doc. No. 142). Plaintiffs filed their complaint on March 8, 2017. The first date set for hearing on confirmation of Debtor's Chapter 11 Plan was June 22, 2017.

### III.    Analysis

A. Dischargeability of CMS's Debt

Defendant contends that CMS has failed to state a claim upon which relief can be granted. Under Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012, a claim should be dismissed if, even accepting the allegations as true, the complaint does not plausibly state a claim for relief and there is no set of facts that can be proven which would support the claim and entitle plaintiff to relief. *See Hughes v. Rowe*, 449 U.S. 5, 10 (1980); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1956); *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011). The Supreme Court has rejected boiler-plate pleadings, noting that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic, Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. The plausibility standard simply requires the court to determine that the plaintiff's allegations are more than "a sheer possibility." *Id.*

11 U.S.C. § 523(a)(2) contains two, mutually exclusive grounds for objecting to the discharge of a particular debt. Section 523(a)(2)(A) concerns statements other than those concerning the debtor's financial condition and § 523(a)(2)(B) concerns only written statements concerning the debtor's financial condition. Defendant contends that CMS's claim must only be reviewed under § 523(a)(2)(B) because all of the allegations concern a financial statement. However, there are allegations that Defendant informed Weaver, a partner in CMS, that he intended to use the loan proceeds to improve the collateral for the loan. This statement from Defendant would not concern his financial condition and thus would fall under § 523(a)(2)(A). Therefore, the court will analyze Cardinal Management's claim for $467,678.52 under both §§ 523(a)(2)(A) and (B).

1. § 523(a)(2)(A)

Section 523(a)(2)(A) requires the debtor to have received money . . . by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition. To establish nondischargeability under § 523(a)(2)(A), CMS must prove:

> That the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of loss.

*Phillips v. Coman,* 804 F.2d 930, 932 (6th Cir. 1986). In short, the Plaintiff must prove fraud to satisfy § 523(a)(2)(A).

6

Circumstantial evidence of fraud is sufficient, but the court must have some evidence of the deceit or scheme to find fraudulent intent. *Cash Am. Fin. Servs. v. Fox (In re Fox)*, 370 B.R. 104, 116-17 (B.A.P. 6th Cir. 2007). Badges of fraud from which intent may be inferred include:

> (1) the suspicious timing and chronology of events; (2) a debtor's lack of financial health at the time of the transaction (e.g., insolvency); (3) the failure to keep adequate records; and (4) the existence of unusual transfers. In utilizing such indicia, however, the Sixth Circuit has cautioned against "factor-counting," instead holding, "[w]hat courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent."

*In re Marroquin*, 441 B.R. 586, 593–94 (Bankr. N.D. Ohio 2010) (internal quotations and citations omitted).

CMS has alleged that Defendant represented to Weaver that the $450,000 loan made on November 27, 2015 would be used to refinance an existing loan and to repair and improve the collateral on the loan. CMS has alleged that, with the exception of repairing the roof of one property, the money was not in fact used to repair and improve the collateral. These allegations are sufficient to make it plausible that Defendant obtained money by a false representation.

However, CMS must also provide enough facts to allow the court to find it plausible, not merely possible, that Defendant had the intent to deceive Weaver when this representation was made. The allegation that Defendant used the loan proceeds in contradiction to his representation to Weaver is consistent with Defendant having had the intent to deceive. There may be other plausible explanations. For example, the Defendant may have originally intended to use the loan proceeds in the manner that he had told Weaver they would be used, and then, after a change in circumstances, spent them differently. CMS admits that he did, in fact, use some of the money for the promised purpose when he fixed the roof of one of the properties used

7

as collateral. But the alleged misuse of the additional funds provides sufficient factual support to overcome a motion to dismiss.

Additionally, CMS must show that it reasonably relied on Defendant's oral representations regarding the use of the proceeds and that it was those representations that caused its loss. CMS states that it relied on the representations because representations were made to Weaver as a partner in CMS. The court finds this statement without more fails to explain how the partnership, as opposed to only Weaver, relied on the representations. Weaver had several relationships with the Defendant. He was his tax accountant, his lender, and a partner in CMS as a lender. The allegations appear to be a recital of the elements without sufficient detail to explain the partnership's reliance. Therefore, CMS has not alleged sufficient facts to make its claim of reasonable reliance plausible. Furthermore, CMS has alleged no facts to support denial of a discharge for the funds that were advanced prior to November 27, 2015.

Because CMS has failed to allege facts sufficient to allow the court to find that it is plausible that CMS reasonably relied on the oral representations and that the total amount of its claim should be nondischargeable, it has failed to state a claim upon which the relief it seeks can be granted under § 523(a)(2)(A). However, the Sixth Circuit requires a plaintiff be provided with leave to amend his complaint unless such amendment would be in bad faith or futile.

> In *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993), we held that "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)); *see also Coffey*, 2 F.3d at 162 (observing that "'federal courts must be liberal in allowing parties to amend their complaints'") (quoting *Hayduk v. Lanna*, 775 F.2d 441, 445 (1st Cir. 1985)). "Denial may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795,

800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)).

*United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 644 (6th Cir. 2003). There have been no prior deficiencies which CMS has failed to cure. There appears to be no undue prejudice to the Defendant, and there is no indication that an amendment would be futile. Therefore, the court will provide Plaintiffs with 21 days to cure these defects.

2. § 523(a)(2)(B)

CMS also seeks to have its debt declared non-dischargeable under 11 U.S.C. § 523(a)(2)(B). The issues that need to be adjudicated in an objection to dischargeability under § 523(a)(2)(B), are whether the debtor received "money, property, [or] services . . . by . . . use of a statement in writing: (i) that is materially false; (ii) respecting the debtor's . . . financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."

CMS alleges that Defendant provided a personal financial statement. Defendant argues that the complaint does not specifically state what information provided on the statement is false. However, the personal financial statement is attached as an exhibit to the complaint, and the complaint does state in its body:

> [Defendant] either grossly overstated the value of his assets in the Personal Finance Statement, grossly understated the value of his assets in his statements and schedules filed with this Court, or Defendant Vollberg has liquidated said assets and failed to set forth said liquidation in his statements and schedules.

The court finds this allegation combined with the attached exhibits of the Defendant's schedules and disclosure statement to be adequate to satisfy F.R.C.P. 12(b)(6). A comparison of the financial statement and the filings in the case shows the same assets with different values. *See*

9

Doc. No. 1, Complaint, Exhibits 4 and 12.  For example, the residence is worth $100,000 less, the medical practice goes from $2,500,000 to "unknown" and personal property, automobiles and collectibles total $1,550,000 on the financial statement but only $312,000 on the amended schedules.

Defendant further argues that the complaint does not state how CMS relied on the personal financial statement or when or under what circumstances Defendant provided the personal financial statement for the refinancing.  CMS does allege that the personal financial statement was provided before the November 2015 advances were made.  It is certainly plausible that they could have made use of the information it contained, but there were also oral representations made at this time for the use of the additional funds. The mere recital that CMS relied on the financial statement to obtain the additional funds is not sufficient to overcome the motion to dismiss. The complaint is also ambiguous as to CMS's reliance. The complaint states that Weaver relied upon the representations in the statement, but it is not clear whether that was in his capacity as a partner or individually, since he had received the statement when he previously made loans as an individual to the Defendant.

With regards to the requisite intent to deceive, the court has previously concluded that overstating the value of assets on a personal financial statement is sufficient circumstantial evidence of fraud to avoid dismissal at this stage of the proceeding.  Viewing the inferences to be drawn from the differences in the statement and the schedules, CMS has alleged facts sufficient to make its claim of intent plausible

Because CMS has not alleged sufficient facts to meet all of the elements of its claim under § 523(a)(2)(B) plausible, the court will not deny the motion to dismiss, but will require that CMS amend its complaint to satisfy the deficiency for the same reasons the court is allowing

an amendment to its claim under subsection (A). Failure to do so will result in the court granting the motion to dismiss.

### B. Dischargeability of Tompkins's Debt

As discussed above, the court should dismiss a claim if, after accepting the allegations as true, the complaint does not plausibly state a claim for relief and there are no set of facts that can be proven which would support the claim and entitle plaintiff to relief. *See Hughes*, 449 U.S. at 10; *Conley*, 355 U.S. at 45-46; *Roberts*, 655 F.3d at 581. Plaintiff Tompkins seeks to have two claims against the Debtor declared non-dischargeable under 11 U.S.C. § 523(a)(2)(B). The issues that need to be adjudicated in an objection to dischargeability under § 523(a)(2)(B) are whether the debtor received "money, property, [or] services . . . by . . . use of a statement in writing:

(i) that is materially false;

(ii) respecting the debtor's . . . financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive."

Defendant argues that Tompkins has failed to plead facts that show a plausible claim under § 523(a)(2)(B). The crux of Defendant's argument seems to be that Tompkins has failed to allege facts that allow the court to determine that he reasonably relied on Defendant's personal financial statement. Plaintiffs did not specifically address this argument in their response.

Tompkins has two claims against Defendant, both of which were acquired in the same manner. Accepting the allegations in the complaint as true, Defendant received money from Weaver by providing a personal financial statement prior to obtaining the loan. Weaver relied on that statement to make the loans. He alleges that Defendant grossly overstated the value of his

11

assets from which the court can infer that the statement was materially false.  These writings concerned Defendant's financial condition. He alleges that with respect to the second loan that the Defendant stopped making payments only three months later.   As explained above, the court can infer from this circumstantial evidence that there was intent to deceive.  After the loans were made, Weaver assigned these debts to Tompkins.

These allegations are sufficient to overcome a motion to dismiss the claim under § 523(a)(2)(B).

Defendant raises one distinction that the court must address.  Under § 523(a)(2)(B)(iii), "the creditor to whom the debtor is liable" must have reasonably relied on the financial statement.  Since Defendant is no longer liable to Weaver, Defendant argues that Tompkins must show that he also reasonably relied on the personal financial statements.  The complaint does not elaborate on this point, noting "Weaver, and ultimately Tompkins, relied upon the representations" in the personal financial statements.

The Sixth Circuit has recognized that assignees may seek non-dischargeability under § 523(a)(2). *Pazdzierz v. First Am. Title Ins. Co. (In re Pazdzierz)* 718 F.3d 582, 590 (6th Cir. 2013).  In *Pazdzierz*, the Sixth Circuit adopted the Ninth Circuit's view that the word "is" in § 523(a)(2)(B)(iii) applies at the time of obtaining the loan and not at the time of the bankruptcy filing. *Id.* at 588.

Under Sixth Circuit law, if § 523(a)(2)(B)(iii) was satisfied when the loan was originally made to Weaver, then Tompkins, as assignee, can step into his shoes and successfully make a claim under § 523(a)(2)(B).  Because the court has already found that Plaintiffs have alleged sufficient facts for Weaver to make a claim under § 523(a)(2)(B), Tompkins has as well.

Therefore, Tompkins has stated a claim upon which relief can be brought and the motion to dismiss will be denied as to his claims.

### C. Plaintiff's Claims Are Not Time-Barred Under 11 U.S.C. 727

Bankruptcy Rule 4004(a) fixes the time for objecting to a chapter 11 debtor's discharge to "no later than the first date set for the hearing on confirmation." Defendant argues that paragraph 7 of the Notice filed on June 9, 2016 states that deadline was September 9, 2016. Since this adversary proceeding was not filed until March 8, 2017, Defendant believes the complaint is time-barred to the extent that it objects to the Debtor's discharge.

The court disagrees with this interpretation of paragraph 7 of the Notice. The September 9, 2016 date is the deadline to object to the dischargeability of individual debts, not to the Debtor's entire discharge. The Notice on which Defendant relies states that the notice of the confirmation hearing date will be sent later, and that notice was sent, on May 21, 2017. Bankruptcy Rule 4004(a) sets the deadline for the debtor's discharge at the "first date set for hearing on confirmation." The first date set for hearing on confirmation in the Chapter 11 was June 22, 2017, well after the objection to Defendant's discharge was filed. Therefore, Plaintiff's claim is not time-barred, and the motion to dismiss will be denied.

### IV. Conclusion

CMS has failed to allege sufficient facts to make its claim under 11 U.S.C. § 523(a)(2)(A) or (B) satisfy F.R.C.P. 12(b)(6). The court grants CMS 21 days to amend its complaint to cure these deficiencies.

Tompkins has alleged sufficient facts to make his claims plausible under Federal Rule of Civil Procedure 12(b)(6). Therefore, the court denies the motion to dismiss his claims under 11 U.S.C. § 523(a)(2)(B).

Additionally, Plaintiffs' claims under 11 U.S.C. § 727 are not time-barred, so the motion to dismiss is denied as to those claims.

A separate order shall enter.

###